IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE VELEZ,<br>    **Plaintiff**<br><br>    v.<br><br>THERMO KING DE PUERTO RICO, INC.,<br>    **Defendant** | **Civil No. 03-2307 (JAG)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, José Vélez (hereafter "Vélez"), was employed by Defendant Thermo King de Puerto Rico, Inc. from 1978 until November 11, 2002, when he was terminated. He alleges his termination was a result of age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 *et seq*., Puerto Rico Law 100 of June 30, 1959, and Puerto Rico Law No. 80 of May 30, 1976.

Defendant Thermo King de Puerto Rico, Inc. (hereafter "Thermo King") moves for summary judgment on the bases that Vélez fails to establish a *prima facie* case of age discrimination and that he has no competent evidence to prove discrimination on the basis of age (**Docket Nos. 29, 24, 33**). Plaintiff, of course, opposes the motion (**Docket Nos. 41, 42**). The summary judgment motion was referred to the undersigned for report and recommendation (**Docket No. 53**).

### I.     Procedural Considerations

José Vélez contests virtually all of the facts as submitted by Thermo King. Out of Thermo King's 41 proposed uncontested facts, the only facts not contested are Fact Nos. 1, 2, 3, 4, 27 and 29. In one of Vélez's responses he objects to the unsworn statement of Steve Soto (hereafter "Soto"), Human Resources Director of Thermo King. However, the affidavit is made (on Soto's personal knowledge) and it demonstrates the basis for that personal knowledge. Vélez also raises numerous objections as to the way Thermo King "interpreted" his deposition testimony. Vélez also objects to statements regarding the undertaking of an investigation wherein he states that the same did not take place. These objections are not

well-taken inasmuch as during his deposition Vélez referred to that very investigation, noting that several Thermo King employees were interviewed during the investigation, including himself. As to the statements of witnesses, they speak for themselves and will be considered by the undersigned. Finally, rather than go through each and every response and/or objection made, the undersigned will review the submitted exhibits and determine the facts.

It is also noted that Vélez did not submit any material facts with his opposition. Additionally, many of the exhibits that Vélez submitted in his opposition are in the Spanish language without English translation in derogation of the Local Rules. Loc.Civ.R. 16(b). At this juncture these exhibits will be considered. Plaintiff, however, is forewarned that he proceeds at his own peril should he fail to submit the appropriate translations. *See Estades-Negroni v. Associates Corp. of North Am.*, 359 F.3d 1, 2 (1st Cir. 2004); *United States v. Rivera-Rosario*, 300 F.3d 1, 6 (1st Cir. 2002).

### II. Factual Background

Based on the evidence on record the undersigned finds the following facts. Vélez began to work for Thermo King on December 4, 1978. *Defendant.'s Fact No. 1.* At the time of his discharge Vélez held the position of tool crib attendant. *Defendant.'s Fact No. 3.* In this position Vélez was in charge of guarding, dispatching, maintaining, and making purchase requisitions of all company tools and maintenance materials. *Defendant.'s Fact No. 4.*

Vélez testified that before he was terminated a chipping hammer, costing "over one thousand dollars" was stolen from Thermo King during the night shift (**Docket No. 33**, Ex. 1, p. 49-50). The morning after the tool was stolen, Vélez discovered that it had disappeared and called Engineer Ginés-Ortiz. *Id.* at p. 49. Vélez testified that photographs of the area were taken and he was told that an investigations was going to be conducted. *Id.* at p. 50. He stated that an investigation started as a result of the theft of the chipping hammer and "who knows if any others," (tools) but he did not know. *Id*. at p. 52. According to Vélez, the investigation began in August or September 2002 or approximately three months before he was terminated from his position. *Id.* at p. 51. Soto also indicated that during the summer

of 2002 Thermo King decided to conduct an investigation due to irregularities in the handling of company tools and materials, as well as the disappearance of the chipping hammer (**Docket No. 33**, Ex. 2).

Vélez testified that around the time the chipping hammer was discovered missing detectives came around asking questions, and that the questioning continued for three months (**Docket No. 33**, Ex. 1, p. 51). Employees from all areas of the company were interviewed. *Id*. at pp. 53-54. Vélez was the last one called in for interview. *Id.* at p. 51. Vélez was asked whether he sold company property, specifically a very expensive scratch resistant paint. Plaintiff told the investigators that he did not because he did not have access to company paints to sell outside. *Id*. at p. 54. Vélez, however, admitted that suppliers left for him gifts or royalties such as: caps, small knives, pencils and items of little value. *Id.* at p. 70. Thermo King purchased Leatherman knives. When questioned if he sold to co-workers or had taken Leatherman knives, Vélez denied selling them. *Id.* at p. 102.

Approximately two weeks before he was fired, Vélez met with Soto and was questioned as to whether he received gifts from the suppliers. *Id*. at p. 139. Vélez told Soto that he received gifts because the suppliers would leave them at the guard's station. *Id.* Vélez admitted to receiving several gifts from several suppliers. *Id.* at p. 140. Vélez admitted that he received "simple" knives from a supplier, but denied ever receiving Leatherman knives from any supplier. *Id.*

At the conclusion of the investigation Vélez was out of a job. Vélez testified that he did not know why his job was terminated nor was he told why (**Docket No. 33**, Ex. 1, pp. 42-43). He narrated that, according to some documents his lawyer had examined; he learned, it was supposedly because he was stealing company property. Said documents reportedly indicated that Vélez sold paint and some other things (other company property) to employees. *Id.* at p. 42. Vélez, however, denied these ever happened. *Id.* Vélez further testified that he now knows that he was fired because "they say I'm a thief". *Id*. at p. 43.

Vélez testified that after he was fired, a younger individual, close to "forty-something" years of age began to work in his area.  *Id.* at p. 174.  He does not know if actually, Thermo King has formally designated someone to replace his position.  *Id.* at pp. 174-75.

Vélez bases his age discrimination claim on the fact that he is 58 years old, he worked for the Thermo King company for 23 years, he was unfairly dismissed, and that after he was dismissed people younger than he were performing his job.  *Id*. at pp. 130, 132.  He also testified that other co-workers who are alleged to have stolen company property, that have done improper things, and who are younger than he are still working at Thermo King, while he is not.  *Id*. at p. 130.  Also, through his testimony Vélez admitted that he received gifts from suppliers as did supervisors, but he was the only one who was fired.  *Id.* at p. 133.  Finally, Vélez testified that he was an outstanding employee in his position, basing such statement on the fact that he could handle every task assigned and he did his job well.  *Id.* at p. 175.   Also, Vélez considered that his personnel file supports his conclusion of being an excellent employees. *Id.*

According to Thermo King, Vélez's employment was terminated following the investigation and as a result of the statements provided by three individuals (**Docket No. 33**, Ex.2).  These persons provided statements assuring that Vélez had sold company tools and materials to them, for profit.  *Id.*  The investigation also revealed that Vélez violated Company rules and policies, including the company policy that prohibits employees from accepting gifts.  *Id.*

The record contains statements from Alfredo Trinidad, age 36; Blanca Figueroa-Díaz, age 47; and, Víctor Quiles, age 28, all dated in September 2002, prior to the time that Vélez was terminated (**Docket No. 33**, Exs. 4, 6, 8; **Docket No. 41**, Ex. 5).  Alfredo Trinidad (hereafter "Trinidad") stated that he bought from Vélez four cans of paint that were the property of Thermo King (**Docket No. 33**, Ex. 4).  He purchased the paint for $80 and asked Vélez to deliver it to his house, which Vélez did.  *Id.*  Trinidad also asked Vélez to sell four cans of paint to Blanca Figueroa.  *Id.*  Vélez delivered the paint to a location off the premises

of Thermo King. *Id.*   Trinidad also stated that he purchased a multi-use knife from Vélez, for which he paid $20.00 and that Vélez offered to sell him a paint gun for $80.00. *Id.*  The paint gun, Trinidad did not buy.  Trinidad also admitted that he had taken lightweight company tools to use at his home. *Id.*

Blanca Figueroa's statement confirms Trinidad's statement that she purchased four cans of paint which were delivered to her by Trinidad (**Docket No. 33**, Ex. 6).  Victor Quiles (hereafter "Quiles") provided a statement in which he assures having been told by Vélez, that a supplier for Thermo King had brought him (Vélez), Leatherman knives for Vélez to sell in return for a 50% profit (**Docket No. 33**, Ex. 8).  Like Trinidad, while admitting he had taken company tools to his home for his personal use, he provided a listing of such items.  *Id.* There is a second statement by Quiles.  From the same it appears that after Vélez was fired, Quiles advised Soto that he was incorrect when he had previously indicated that he had taken tools from Thermo King (**Docket No. 41**, Ex. 1).  At the time he recanted his original admission, Quiles made no reference to Vélez. *Id.*

The record also contains a written statement signed by Vélez, dated September 23, 2002, (**Docket No. 33**, Ex. 12).  Therein Vélez admits that he had received different royalties from Thermo King Suppliers which he sold to different co-workers. *Id.*   However, Vélez denied ever having sold paint to anyone at Thermo King. *Id.*  He also denied having sold knives belonging to Thermo King. *Id.*  In his recent unsworn statement, dated December 14, 2004, Vélez denied selling tools, materials or any other type of company property during the time he was employed with Thermo King (**Docket No. 41**, Ex. 2).

The evidence on record also establishes that Thermo King has a code of conduct for its employees (**Docket No. 33**, Ex. 10).  One of its rules concerns relationships with customers, vendors and suppliers and provides guidelines for acceptance of "social amenities" with suppliers.  *Id.*  The ethical rules provides that "If you are offered or receive a substantial gift or favor, it should not be accepted and your supervisor should be notified.  This guideline does not apply to items of small value commonly exchanged in business relationships, but

even in this case, discretion and common sense should be your guide." (**Docket No. 33**, Ex. 10).

During his deposition Soto stated that the termination of Vélez occurred because the normal ethics of the company were not followed and because of the information obtained from persons during the meetings and interviews had with them (**Docket No. 41**, Ex. 3, p. 60). Soto was asked if before Vélez was fired whether he reviewed the standards that established the distinction between items of lesser value and items of greater value. *Id.* at p. 74. He stated that he reviewed the code of ethics, but besides that he did not review anything else. *Id.* He further stated that before Vélez was terminated, he consulted with Thermo King's attorney. *Id.*

Vélez's employment was terminated on November 11, 2002. Thermo King advised the Puerto Rico Department of Labor on December 20, 2002, that Vélez's employment was terminated because he had accepted gifts from Thermo King's suppliers[1] (**Docket No. 41**, Ex. 4). Thermo King has not hired a replacement for Vélez's position, but following Vélez's dismissal, it has had several employees performing the duties of tool crib attendant (**Docket No. 33**, Ex. 2).

II. **Motion for Summary Judgment**

Thermo King moves for summary judgment on the ADEA claim asserting that Vélez has failed to establish a *prima facie* case of age discrimination. Thermo King further argues that even if the Court finds that Vélez has established a *prima facie* case of age discrimination, Vélez has failed to come forth with sufficient evidence to permit a finding that the reason for his discharge constitutes a pretext for age discrimination. Conversely, Vélez argues that he has established a *prima facie* case of discrimination and further that the proffered reason for his discharge was a pretext to masquerade discrimination.

---

[1] Currently there is an ongoing discovery dispute over an electronic communication (e-mail) regarding the grounds for Vélez's termination. The undersigned notes that this e-mail indicates that by at least October 25, 2002, Thermo King was contemplating Vélez's discharge from employment.

Thermo King also asserts that Vélez has no valid cause of action for wrongful discharge under Puerto Rico Law 80 inasmuch as his dismissal was justified.

### A.	Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Surety Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir. 2004).  When ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004).  An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998).  Finally,  it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252.

### B.	ADEA

Under the Age Discrimination in Employment Act of 1967 ("ADEA"),  29 U.S.C. §§ 621 *et seq.,* "it is unlawful for an employer. . .to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1).

In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually play a role in the employer's decision making process and have a determinative or motivating influence on the outcome. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993)).

When there is no direct evidence of discrimination, the plaintiff may prove his case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Rivera-Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 25 (1st Cir. 2001); *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (2000); *Feliciano v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir. 2000). It is the plaintiff's burden to establish a *prima facie* case of age discrimination and he "must adduce evidence that: (1)[he] was at least forty years of age; (2)[his] job performance met the employer's legitimate expectations; (3) the employer subjected [him] to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged." *González v. El Día, Inc.,* 304 F.3d 63, 68 (1st Cir. 2002); *see also Baralt v. Nationwide Mut. Ins. Co.,* 251 F.3d 10, 17 (1st Cir. 2001). This *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *González,* 304 F.3d at 69-70. After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." *Id.* at 70; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981).

If the employer is able to meet its burden, the presumption afforded to plaintiff's *prima facie* case disappears and the plaintiff must "adduce sufficient [credible] evidence that age was a motivating factor in the challenged employment action." *González,* 304 F.3d at 69. Plaintiff may meet his burden of proof by showing that the employer's articulated reason for the challenged employment action was pretextual, *Domínguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 n. 5 (1st Cir. 2000), from which the factfinder in turn may, but need not, infer

the alleged discriminatory animus. *Fite v. Digital Equip. Corp.,* 232 F.3d 3, 7 (1st Cir. 2000) (citing *Reeves,* 530 U.S. 133).

        **1.**      **Prima Facie Case**

As to the four factors of a primae facie case. Vélez clearly meets two of the elements. He is over forty years of age, and his employer subjected him to an adverse employment action in that he was actually discharged. Whether Vélez meets the other two elements is not quite as clear.

Vélez contends that at the time of his discharge he was meeting his employer's legitimate employment expectations. When a district Court looks to an employer's legitimate employment expectations, the issue is not the employee's past performance but "whether the employee was performing well at the time of termination." *Karazanos v. Navistar Intern. Transp. Corp.,* 948 F.2d 332, 336 (7th Cir. 1991); *Nuñez v. Junssen Ortho, LLC,* 360 F.Supp.2d 377, 394 (D.P.R. 2005).

Vélez alleges in his complaint that he "was an outstanding employee who always excelled in the positions he occupied" at Thermo King (**Docket No. 1**, para. 23). He testified at his deposition that he was an outstanding employee in his position, based on the fact that he could handle every task assigned, and he did his job well. In his opposition to the summary judgment he notes that Thermo King did not introduce any evidence that it had ever disciplined him during his 22 years of employment. Vélez also refers to the fact that during the investigation he denied ever selling Thermo King property (i.e. paint, knives) to other employees. Vélez further argues that there is nothing in the record to reflect that Thermo King ever filed criminal charges against him. He provides nothing else to support his contention of satisfactory job performance. The Court is mindful that although Vélez makes much of the fact that Thermo King failed to present certain evidence, it is the plaintiff's burden to establish the elements of a *prima facie* case; not the defendant employer.

Although Vélez found his job performance to be satisfactory this does not establish the performance aspect of his *prima facie* case, because a plaintiff's own perception of his job

performance is irrelevant; what matters is Thermo King's perception. *See DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998); *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991); *Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir. 1991) (overruled in part on other grounds by *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993)). Therefore, to determine whether Vélez was meeting his employer's expectations the court looks to the perceptions of Thermo King's management. In this regard, Vélez points to the fact that during the investigation he denied ever selling Thermo King property to other employees. Yet, the evidence is that his fellow employees implicated him in acting in such a manner. Vélez also omits the fact that he received items from Thermo King suppliers and that he sold said items to co-workers, acts which apparently violated the Code of Conduct for Thermo King employees. Most important, is that Vélez admitted to this conduct in a statement signed on September 23, 2002. A month later, Thermo King was contemplating the discharge of Vélez. More so, a year before this lawsuit was ever filed, Thermo King advised the Puerto Rico Department of Labor that Vélez was terminated for accepting gifts or royalties from suppliers. The information provided to the Department of Labor is consistent with the actions that Vélez admitted to in his September 23, 2002 statement.

Also, the record establishes that Thermo King took into consideration the statements of Velez's co-workers attesting to the fact that Vélez had sold company property to other employees or to them. The main company product at issue was an expensive paint, but it was also indicated that Vélez sold other Thermo King products as well. Even setting aside any reference to the sale of company paint to other employees, a fact that Vélez disputes, the evidence of record demonstrates that Thermo King has offered substantial evidence that at the time of his discharge, Vélez was not meeting the legitimate job performance expectations. Notably, Vélez admitted to accepting supplier gifts and selling these, while on Thermo King property, acts which apparently violated the company's code of ethics. Vélez's attempts "to downplay the situation simply do not impugn the defendants' belief that it was significant enough to justify termination." *Ragland v. Rock-Tenn Co.*, 955 F.Supp. 1009 (N.D.Ill. 1997);

*See Sample v. Aldi, Inc.,* 61 F.3d 544, 549 (7th Cir.1995) ("Although [plaintiff] believes that the incident was insignificant, to survive summary judgment he must call into question the honesty of [his employer's] belief that it was significant."). Indeed, nothing that Vélez has proffered impugns the honesty of Thermo Kings's position and belief, that Vélez's admitted conduct with regard to having received and sold suppliers' gifts, fatally impaired Thermo King's confidence in his ability to comply with its code of ethics.

The facts before the Court establish that there was an investigation which revealed that Vélez accepted supplier gifts and sold then in derogation of company rules and regulation. The facts also before the Court are that the violation of said rules resulted in the termination of Vélez's employment. Accordingly, at the time of his discharge it does not appear that Vélez was meeting Thermo King's legitimate employment expectations.

Next, Thermo King argues that Vélez has failed to meet the last prong for a *prima facie* case. It argues that after Vélez's discharge no employee was hired by Thermo King as a tool crib attendant, and no other employee has been formally and permanently assigned to the position. Thermo King also argues that Vélez has not controverted its averment that Vélez was not replaced by a younger employee.

The First Circuit has held several times that a plaintiff need not demonstrate that a new employee was hired or a current employee was formally designated as a replacement in order to satisfy the fourth prong of the *prima facie* case. *Rodríguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52 (1st Cir. 2005). More so, "[a] replacement need not be sought from outside the company. . .nor need he be designated formally as such." *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013. n. 11 (1st Cir. 1979). Additionally, evidence that "plaintiff's job functions are absorbed by several different employees of defendant" is sufficient to establish the fourth

*prima facie* element. *Kale v. Combined Ins. Co. of Am.,* 861 F.2d 746, 760 (1st Cir. 1988); *Keisling v. SER-Jobs for Progress, Inc.,* 19 F.3d 755, 760 (1st Cir. 1994). To establish the replacement element, all Vélez need do is to show that Thermo King has a continuing need for the work that he was performing prior to his termination. *See Keisling,* 19 F.3d at 760. He does not have to show that the replacement was new to the company or specially designated as such. *Rodríguez-Torres*, 399 F.3d at 59.

The record reflects that Thermo King has not hired a replacement for Vélez's position and has not permanently assigned an employee to the position. Instead, several employees have been performing the duties of tool crib attendant. In light of the aforementioned standard, these facts are adequate to establish the final element of the *prima facie* case.

Vélez has not met the four elements of a *prima facie* case. Nonetheless, even if the employment expectation prong of the *prima facie* case was undecided, "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a *prima facie* case." *Fontánez-Nuñez v. Janssen Ortho, LLC,* 360 F.Supp.2d 377, 395 (D.P.R. 2005) (quoting *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir. 1996); *see also Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir. 1985) ("The prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a *prima facie* showing of discrimination."). Accordingly, the undersigned will consider whether Thermo King establishes legitimate, nondiscriminatory reasons for Vélez's termination. *See Alvarez-Cabrera v. Trataros Constr.,* 184 F.Supp.2d 149 (D.P.R. 2002) (holding that the *prima facie* case and the employer's

non-discriminatory reason are "irretrievably intertwined" where the employer asserts that it discharged the plaintiff because her job performance was not satisfactory, and thus it was necessary to examine Defendants' non-discriminatory reasons) (quoting *Lawrence v. Northrop Corp.,* 980 F.2d 66, 69 (1st Cir. 1992)).

### 2. Nondiscriminatory Reason for Discharge

Thermo King has advanced a strong, objectively verifiable set of reasons for Vélez's termination. A company administrative investigation revealed that Vélez appropriated company property which he then sold to other employees, and that he accepted supplier gifts which he then resold to fellow employees. Despite Vélez's denial, three employees made statements implicating him in acts that violated company policy. These acts included the sale of a company expensive product (paint), by Vélez to two other individuals, the sale of a Leatherman knife (regularly sold by Thermo King), by Vélez to a fellow co-worker, the offering of other sale of goods to a co-worker (paint gun), and a co-worker statement regarding Vélez's admission to the effect that he sold Leatherman knives obtained from a supplier in exchange for 50% of the profits. Further, Vélez admitted that he received gifts from suppliers and that he sold the gifts to different co-workers. Finally, the Company Code of Conduct sets forth certain standards for employees to abide by and one of the standards concerns prohibition or limitation for the acceptance of gifts or royalties from suppliers.

Based upon the foregoing, the undersigned finds that Thermo King articulated a legitimate nondiscriminatory reason for terminating Vélez from employment.

### 3. Pretext

Vélez, however, points to several factors which he argues cast doubt upon the legitimacy of Thermo King's reason for dismissing him. Vélez argues that Thermo King did not press criminal charges against him, despite its position that Vélez stole company property. Also, the statements of Figueroa, Trinidad and Quiles besides indicating that they either purchased company products (paint) from Vélez or that they had taken company tools home with them, yet they were not been discharged from their employment. Vélez notes that these three individuals are all younger than he, ages 28, 36 and 47. Vélez also argues that the investigation conducted by Thermo King was designed to intimidate and coerce employees into providing false evidence, and in support proffers, that Quiles recanted his initial statement.

The record reflects, however, that this is somewhat inaccurate inasmuch as, Quiles made no mention of Vélez when he changed his statement, but clarified to his employer that he [Quiles] had not taken any company equipment home for his personal use. Vélez argues it is reasonable to infer that it was decided first to terminate him and that the investigation was a sham to justify his termination because the investigation really began earlier, on June 10, 2002. In support of this, Vélez refers to a purchase order issued to CR Consultants & Resources Int., with an order date of June 10, 2002, for an audit of the security system. There is no other information contained in the purchase order. Vélez posits that this purchase order permits an inference that the chipping hammer was either taken with company authorization or that Thermo King was covering up a crime to protect someone. There is nothing on the record to support this supposition.

With regard to company policy regarding suppliers, Vélez argues that the rules are not a blanket prohibition against receipt of goods or services from suppliers.  He further argues that no evidence was presented to establish conflict of interest, the value of the gifts allegedly received and how they affected Thermo King's business.

Finally, Vélez argues that he was never given a reason for his termination and did not know the reason until five weeks later when he learned of it from the Department of Labor and documents he was allowed to examine, provided to him by his counsel.  Vélez argues that these factors do establish that the post hoc justification for his termination was per se, pretextual.

The undersigned has thoroughly reviewed the evidence before it. While Vélez makes numerous arguments, there is no escaping from the fact that he received pecuniary gain by his acts, even when one removes from the equation the selling of company paint and other company items.  Nothing in the record gives any indication that the other employees Vélez refers to, all younger than he and none who were discharged, profited from their actions. Actually, these employees paid different sums to Vélez.  More so, as referenced many times in this Report and Recommendation, Vélez admitted that he sold the royalties (items) he received from Thermo King's suppliers.  Finally, it is undisputed that Vélez was implicated by at least two fellow employees of selling company property.

The only fact Vélez submits, in support of his age discrimination claim is that Vélez was over 40 at the time he was discharged. Vélez has placed no other evidence in the record of any age-based animus.   The record is devoid of any credible evidence that the actions taken by Thermo King were a pretext for age discrimination.  Rather, the record demonstrates that

Thermo King took the actions it did because of the Velez's admission regarding the acceptance and sale of royalties received from suppliers and as a result of the information received from and corroborated by Thermo King employees establishing that Vélez sold and had offered for sale company items or products. On the record before the Court, no inference can be rationally made to infer an adverse employment action based upon age discrimination.

Therefore, it is RECOMMENDED that Defendant's motion for summary judgment be GRANTED as to the ADEA claims brought in Counts 1 and 2 of the Complaint, inasmuch as, Plaintiff has failed to establish a *prima facie* case and because Plaintiff has failed to present sufficient evidence from which a rational factfinder could infer an adverse employment action based upon age discrimination.

### C. Supplemental State Claims

As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995). Inasmuch as, it is RECOMMENDED that summary judgment be GRANTED as to the federal age discrimination claims brought under the ADEA, IT IS FURTHER RECOMMENDED that the supplement state claims be **DISMISSED**.

### III. Conclusion

Based upon the foregoing analysis, IT IS THEREFORE RECOMMENDED that the Motion for Summary Judgment be **GRANTED** in favor of Thermo King de Puerto Rico, Inc. as to the claims brought under the ADEA and that the Supplement State Claims be

**DISMISSED** (**Docket No. 29**).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Compote*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 29th day of August, 2005.

                                                          S/**AIDA M. DELGADO-COLON**
                                                          **U.S. Magistrate-Judge**